UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA SLEDGE, | |
| Plaintiff, | No. 15 C 9085 |
| v. | Judge Thomas M. Durkin |
| ROBERT WILKIE, Secretary, U.S. Department of Veterans Affairs, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Linda Sledge alleges that she was fired from her job as a nurse practitioner with the Department of Veterans Affairs (the "VA") because: (1) she is African-American, (2) of her age, (3) of a perceived disability, and (4) she filed complaints against her supervisors. The VA has moved for summary judgment. R. 68. This opinion addresses that motion, as well as Ms. Sledge's motion seeking recusal of the undersigned judge, R. 75, and for discovery sanctions against the VA, R. 38.[1] For the following reasons, the motion for recusal is denied, the summary judgment is granted, and the Court finds no reason to revisit its prior denial of the motion for sanctions.

---

[1] The Court previously denied Ms. Sledge's motion for discovery sanctions without prejudice, because "it [was] not possible to determine the materiality of the . . . allegations in [her] sanctions motion without considering and deciding the summary judgment motion." R. 85.

## I.    Recusal Motion

### A.    Procedural Background

In support of her recusal motion, Ms. Sledge argues the following:

> Judge Durkin has shown an appearance of bias and prejudice towards the Plaintiff, Linda Sledge since she took over her case as a Pro-Se litigant and during the Discovery Phase of the above named case in December 2016. During this first meeting, Judge Durkin appeared condescending, spoke in intimidating tones of voice and lacked patience after my Attorney abandoned my case. During the second status meeting, prior to Discovery, he loudly proclaimed "I don't know what happened between you and your attorney!!! Are you serious about this case!!!" Plaintiff wrote a letter and mailed this to Judge Durkin in hopes of insuring a fair, respectful experience in his court room. (exhibit 1, letter to Durkin). He has allowed the named Defendant Attorneys to violate the Federal rules of Civil Procedure regarding the Discovery Process, bypassing fundamental Fairness towards the plaintiff (and thus due process).

R. 75 at 2.[2] Ms. Sledge also makes the following contentions:

> I was doomed when I walked through the court doors and have three strikes against me in this court. 1. My skin is not white[.] 2. I am female[.] 3. I am a pro see litigant[.] I am not offered the same rights as the Defendant, and have been shown gross partiality, personal bias, extreme prejudice and obvious animosity.

> The court continues to show favoritism, to the Defendants by not holding them accountable of [sic] violating the Federal Rules of Civil Procedure regarding Discovery; by not holding them accountable for filing frivolous motions, delaying the discovery process, by withholding evidence

---

[2] Ms. Sledge alleges that the Court spoke to her loudly at a hearing in December 2016. But the letter she attaches to her recusal motion alleges that the Court made the statements at issue at a hearing on November 2, 2016. *See* R. 75 at 10. This corresponds with the Court's records, although, as is discussed below, the Court did not use the tone Ms. Sledge alleges at any hearing.

that could prove detrimental to their case; by submitting falsified/altered and fabricated evidence; by not upholding the standards of Professional conduct…. the list goes on and on.

Judge Durkin stated that the treatment "is not because of the color of your skin," but did not deny that it is not because of being female and a pro-se litigant, he did not deny that Plaintiff is being treated unfairly and that favoritism is shown towards the Defendant Attorneys.

R. 75 at 7.

Although Ms. Sledge cites 28 U.S.C. § 455 in her motion, that section provides the standard for a judge to disqualify *himself*. Ms. Sledge's motion is more appropriately analyzed by the standard provided by 28 U.S.C. § 144 which provides a basis for a *party* to seek a judge's disqualification. "Unlike a motion to recuse under 28 U.S.C. § 455, which simply requires the reasonable appearance of bias, a motion to disqualify under § 144 requires a showing of *actual* bias." *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004) (emphasis in original). Section 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of an adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

"A judge must recuse himself under § 144 if a party files a timely and sufficient affidavit suggesting personal prejudice against the party." *West v. Litscher*, 209 Fed. App'x 557, 559 (7th Cir. 2006). "[O]nly personal animus or malice on the part of the judge can establish actual bias." *Hoffman*, 368 F.3d at 718. "[J]udicial rulings alone will almost never constitute a valid basis for disqualification under § 144." *Id.* "A court may only credit facts that are sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors" or "mere conjecture and supposition" are "insufficient." *Id.* "And while a court must assume the truth of the [sufficiently described] factual assertions, it is not bound to accept the movant's conclusion as to the facts' significance." *Id.* "A trial judge has as much obligation not to recuse himself when there is no occasion for him to do so [under § 144] as there is for him to do so when the converse prevails." *Id.* (reference to § 144 in the original).

Ms. Sledge filed this case through an attorney nearly three years ago on October 13, 2015. Ms. Sledge's counsel requested that the initial status be delayed until February 19, 2016. *See* R. 5; R. 6; R. 8. At the initial status hearing on February 19, discovery was set to close on July 29, 2016 by agreement of the parties. *See* R. 10. At a status on June 2, 2016, Ms. Sledge's counsel represented that she had been unable to proceed with discovery because she had been on maternity leave, but she did not request an extension of the discovery deadline.[3]

---

[3] Neither party requested that official transcripts be prepared of any of the hearings in this case. The Court's recitation of events during the hearings is based on the

At the next status hearing on July 29, 2016, discovery had still not begun, and Ms. Sledge's counsel made a motion to withdraw because she had not been able to communicate with Ms. Sledge. The Court ordered Ms. Sledge's counsel to notice a motion to withdraw for a date which both counsel and Ms. Sledge would be present.

At the hearing on the motion to withdraw on August 29, 2016, Ms. Sledge disputed her counsel's assertion that they had not been able to communicate. She stated that she did not want to "look like the bad person" because her attorney withdrew. The Court assured Ms. Sledge that her attorney's withdrawal did not reflect poorly on her as a person and explained that it is not uncommon for attorneys to leave clients and for clients to find new attorneys over the course of a case. Ms. Sledge stated that that she was "pretty sure" she had a new attorney lined up. The Court gave Ms. Sledge 60 days to secure a new attorney.

By the next status hearing on November 2, 2016, Ms. Sledge had not found a new attorney. The Court granted her an additional 30 days to continue her search, stating that she would have to proceed pro se otherwise. The Court told Ms. Sledge that if she was unable to hire an attorney she should consult with the VA's counsel to agree on a new discovery cut-off date. The Court also encouraged Ms. Sledge to visit the Pro Se Help Desk in the court building.

Ms. Sledge was unable to find an attorney. At the next hearing on December 5, 2016, the Court denied Ms. Sledge's request for an appointed attorney because she

---

Court's case file, just as Ms. Sledge's allegations of statements made at the hearings can only be based on her personal notes and recollection.

has a graduate level education and had demonstrated the wherewithal to prosecute the case herself. The Court explained to Ms. Sledge the requirement of Rule 26(a) disclosures, and that she had the right to seek documents, submit interrogatories, and depose witnesses. The Court again encouraged Ms. Sledge to visit the Pro Se Help Desk. Discovery was set to close on April 7, 2017.

At the next status hearing on February 23, 2017, the VA's counsel noted that Ms. Sledge had produced a number of documents, and that he would be seeking interrogatory answers from her prior to scheduling her deposition. The Court encouraged Ms. Sledge to make a settlement demand to the VA. Ms. Sledge stated that she did not have any questions of the Court that day.

Ms. Sledge sent a request for production of documents and interrogatories to the VA on March 12, 2017. *See* R. 25 at 18. The VA refused to respond to the requests because the due date fell after the close of discovery. *See id.* at 4. On March 21, 2017, Ms. Sledge filed a motion for an extension of the discovery deadline, R. 25, and on March 28, 2017, she filed a motion to compel, R. 27. Ms. Sledge was deposed on March 31, 2017. *See* R. 74 at 25.

At a hearing on April 7, 2017 (which was to have been the close of discovery), the Court granted both of Ms. Sledge's motions. *See* R. 28. The Court set May 8, 2017 as the deadline for the VA to respond to Ms. Sledge's discovery requests and to close discovery. The Court indicated that at that point the case would likely proceed to summary judgment briefing. The Court asked Ms. Sledge if she had any questions, and she said she did not.

The VA sought an extension for responding to Ms. Sledge's discovery. R. 29. The Court granted that motion at a hearing on May 8, 2017. The Court inquired as to the possibility of settlement, and the VA's counsel indicated that it was unlikely. On that basis, the Court stated that its practice of holding an off-the-record conference prior to filing of a summary judgment motion would not be "fruitful." The Court told the parties that a summary judgment briefing schedule would likely be set at the next hearing on May 31, 2017. The Court asked Ms. Sledge whether she intended to take any depositions, and she said she did not and that she would rely on interrogatory answers.

The VA again sought a discovery extension. *See* R. 32. Ms. Sledge did not object, and the Court extended discovery to June 20, 2017. *See* R. 34. The next status hearing was rescheduled to that day as well. *Id.* Despite having no objection to the VA's motion for an extension, Ms. Sledge file a motion for sanctions against the VA on June 6, 2017. R. 35. The motion was premised on the VA's delays in producing documents and Ms. Sledge's contentions that the VA's interrogatory answers were false. *See id.*

At the hearing on June 20, 2017, the Court noted that the parties had not conferred prior to Ms. Sledge filing her motion, and that the VA had produced additional documents since the date Ms. Sledge filed the motion. The VA's counsel also represented that the VA had discovered additional documents responsive to Ms. Sledge's request that it had not yet produced. The Court ordered the parties to confer to determine whether they could resolve the disputes Ms. Sledge identified in her

motion, particularly with reference to the documents Ms. Sledge sought. The Court denied the sanctions motion without prejudice to Ms. Sledge refiling it if she was not satisfied after conferring with the VA. The Court asked Ms. Sledge whether she had any questions, and she said no and thanked the Court for its explanations. A hearing was set for July 28, 2017.

At the hearing on July 28, the VA's counsel said that he had sent Ms. Sledge additional documents, but she said she had not received them. It also became clear that although the parties had spent some time conferring regarding Ms. Sledge's motion, significant areas of disagreement remained. The Court ordered the VA's counsel to create a new disc containing the documents to be produced to Ms. Sledge and hand it to her while she was at the courthouse to ensure that she received it. The Court also ordered the parties to confer again about Ms. Sledge's motion, and the VA to file a brief by September 11, 2017 clearly indicating which items the parties could resolve and which remained in dispute. Ms. Sledge was given until October 2 to file a reply brief. The Court asked Ms. Sledge whether she had any questions, and she said no. A hearing was set for October 19, 2017.

The brief the VA filed in accordance with the Court's order noted that it had agreed to confirm answers to certain interrogatories Ms. Sledge had questioned. *See* R. 40. The VA also asserted that certain interrogatory answers were accurate, despite Ms. Sledge's disagreement. *See id*. Ms. Sledge alleged that a number of documents produced by the VA were falsified. In addressing this issue at the hearing on October 19, 2017, the Court noted that at least one of the produced documents was dated after

Ms. Sledge's termination and that the VA would likely need to have an explanation for that fact should that document be relevant to summary judgment or trial. In general, the Court explained to Ms. Sledge that the discovery period was not the time for the Court to make rulings about the authenticity of particular documents or interrogatory answers. The Court explained further that Ms. Sledge could make arguments questioning the veracity of discovery responses on summary judgment or at trial, but that she would need to have evidence to support her assertions.

At the October 19, 2017 hearing, Ms. Sledge also emphasized that the VA had failed to seek documents from a number of witnesses she had identified. The Court told Ms. Sledge to prepare a concise list of names of people from which she wanted the VA to collect documents. The Court also ordered the VA to address Ms. Sledge's requests and prepare a report before the next hearing.

Ms. Sledge submitted her requests to the VA on October 20, 2017. *See* R. 44 at 4-10. After receiving Ms. Sledge's list, the VA moved to strike the list as not complying with the Court's order. *See* R. 44. Ms. Sledge had submitted to the VA a six page document that included a list of names, but listed information she thought the individuals could provide (in a form akin to an interrogatory) instead of describing categories of documents those individuals might possess. *See* R. 44 at 4-10. The Court explained as much to Ms. Sledge at a hearing on October 30, 2017. Ms. Sledge disagreed and insisted that the submission she made to the VA complied with the Court's instruction to provide a list of names. She expressed frustration that she had been requesting documents from the VA since March and the Court had not forced

the VA to produce the documents. Ms. Sledge stated further that her being an African-American woman proceeding pro se constituted "three strikes" against her from the start and had caused the Court to show favoritism towards the VA in the management of discovery. In an effort to reach a resolution to the apparent communication impasse that had evolved, the Court did not further attempt to explain to Ms. Sledge how her submission to the VA did not comply with the Court's order. Instead, the Court instructed the VA's counsel to "work with" the list of names Ms. Sledge had provided and supplement the VA's production accordingly.

On December 2, 2017, the VA filed a declaration listing the results of the searches for documents possessed by the people on Ms. Sledge's list. *See* R. 47. At a hearing on December 4, 2017, the VA stated the documents identified in its December 2 declaration would be produced by the end of that week. The VA also noted for the Court that Ms. Sledge had begun to serve document subpoenas on VA staff seeking the same documents she sought on October 20. The Court instructed Ms. Sledge to provide copies of the subpoenas to the VA's counsel so he could work with the individuals to produce the documents.

Ms. Sledge then filed 17 show cause motions seeking to hold in contempt the individuals she had subpoenaed. *See* Rs. 49-65. At a hearing on December 18, 2017, the Court asked Ms. Sledge to explain what she had not received from the people she subpoenaed. Ms. Sledge stated that she had not received certain interrogatory answers. The Court explained that interrogatories answers could only be compelled from parties to a case and that non-parties did not have to answer. Ms. Sledge also

stated that she had not received "anything I've asked for since March." In response, the Court noted that Ms. Sledge had "been provided a number of documents from the VA." Ms. Sledge, however, insisted the she had asked for "numerous documents" related to her termination that had not been produced, but she did not identify what documents were missing. She stated that she had "a lot of objections," but it was "fine" with her if the Court closed discovery and proceeded to summary judgment. Upon this representation, the Court set a briefing schedule for summary judgment. Ms. Sledge did not object.

## B.     Analysis

Ms. Sledge argues that the Court is biased against her because she is an African-American woman proceeding pro se. Sledge contends that she can infer this bias from the Court's decisions in favor of the VA during discovery and the Court's alleged condescending and impatient attitude toward her and her claims during hearings.

Ms. Sledge's claim that that Court has permitted the VA to violate the rules of discovery is not a basis for recusal. Adverse judicial rulings are a basis for appeal, but not recusal.[4] Furthermore, the foregoing recitation of the case's procedural history demonstrates that the Court has gone to great lengths over the course of more than

---

[4] To the extent Ms. Sledge contends that the Court demonstrated favoritism to the VA by granting its motions for discovery extensions, the Court routinely grants extensions of discovery as long as the Court perceives the parties to be proceeding with discovery in good faith. Indeed, the Court twice extended the discovery deadline to accommodate Ms. Sledge—once when her former attorney withdrew, and once on a motion by Ms. Sledge.

a year to assist Ms. Sledge in communicating to the VA what documents she sought. But Ms. Sledge has never articulated with particularity the documents the VA has failed to produce.

She also argues that some of the documents she has received are fabricated and that interrogatory answers are false. But Ms. Sledge has never presented the Court with a basis to make such a finding.

The Court cannot conduct discovery for a party but can only give a party a fair opportunity to take discovery. Ms. Sledge had more than a year to do so and never clearly articulated what she believed was lacking in the process. The Court's alleged failure to take a more active role in assisting Ms. Sledge in prosecuting her case is not a basis for recusal.

Ms. Sledge's allegation that the Court has demonstrated condescension and impatience with her and her claims is unfounded. The only evidence Ms. Sledge points to in this regard are two statements the Court made at the hearing on November 2, 2016. Ms. Sledge alleges that the Court loudly stated in an intimidating voice, "I don't know what happened between you and your attorney!!! Are you serious about this case!!!" The Court's reference to "what happened between you and your attorney" was made in the course of setting a new discovery deadline since Ms. Sledge's former attorney had not conducted any discovery to that point in time. This was a decision in Ms. Sledge's favor, and the statement was intended to convey that the Court would not penalize Ms. Sledge for the delays caused by her former attorney. The Court's reference to Ms. Sledge being "serious about this case" was made in the

context of Ms. Sledge having asked for an additional 30 days to find an attorney when she had been unable to do so in the previous 60 days. The Court was concerned to ensure that Ms. Sledge understood that the 30 day extension was the last extension she would receive in order to find a new attorney.

Despite Ms. Sledge's addition of exclamation points to these statements by the Court, neither statement indicates condescension or impatience or animosity of any kind by the Court towards Ms. Sledge. Both statements address run-of-the-mill case management circumstances that are hardly unique to Ms. Sledge's case and have nothing to do with her personally. The allegation that the Court spoke to Ms. Sledge loudly is rejected out of hand. In five-and-a-half years on the bench, the Court cannot recall ever speaking to a party loudly, including Ms. Sledge. Ms. Sledge has offered no basis for her conclusion that the Court made these statements out of personal animosity towards her, and the Court is not bound to accept her unsupported beliefs in this regard.

Ms. Sledge has failed to demonstrate the personal animus necessary to justify the Court's recusal. For that reason, Ms. Sledge's recusal motion is denied. If allegations such as Ms. Sledge's were a sufficient basis for recusal, no judge would last more than a few months on any given case.

## II.  Summary Judgement Motion

The Court now turns to the VA's summary judgment motion. The Court's analysis of this motion will also suffice to address whether there is any reason to revisit Ms. Sledge's motion for discovery sanctions.

## A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than the "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## B. Factual Background

Ms. Sledge was a nurse with the VA from September 2006 through October 2014, first at the Jesse Brown Medical Center in Chicago and then, beginning in 2010, at the Adam Benjamin Clinic in Crown Point, Indiana. She worked primarily as a nurse practitioner. A nurse practitioner can prescribe medication and lab work under the supervision of a physician. This supervision arrangement is memorialized in a "collaborative agreement" between the nurse practitioner and a physician. Without a collaborative agreement, a nurse practitioner cannot engage in prescribing medication or lab work, and therefore cannot fulfill her job duties. The VA has

produced a document that is a collaborative agreement between Ms. Sledge and Dr. Daolong Zhang, with Dr. George Paniotte serving as the "alternative collaborating physician." *See* R. 91-2. Ms. Sledge testified that she did not believe that she had a collaborative agreement with Dr. Paniotte, *see* R. 74 at 64 (54:2-8), but she has offered no evidence to corroborate her testimony.

Ms. Sledge first worked for the VA at the Jesse Brown Medical Center. Her supervisor there was Dr. Yakov Gertsberg. Ms. Sledge filed complaints against Dr. Gertsberg in 2008 and 2010, alleging that he made unfounded accusations against her and acted in an overbearing and harsh manner towards her. *See* R. 90-1 at 6.

Ms. Sledge transferred to the Adam Benjamin Clinic in 2010. The complaint she filed against Dr. Gertsberg that year also included allegations against Dr. Zhang. *See* R. 90-1 at 6. This was prior to Dr. Zhang becoming Ms. Sledge's collaborative physician. Ms. Sledge testified that Dr. Zhang was friends with Dr. Gertsberg, and that Dr. Zhang would make condescending remarks to her based on what Dr. Gertsberg had told Dr. Zhang about her. R. 74 at 82 (90:8-17). After Ms. Sledge's complaint against Dr. Zhang was resolved, he signed a collaborative agreement with her. *See* R. 90-1 at 6.

On April 23, 2013, Ms. Sledge received a performance review from her supervisor Ms. Deloach Hamilton with a low rating in one proficiency category. The notes of the review also indicated that Ms. Sledge did not "get along with people in the lab and the clinic." *See* R. 74 at 95. Ms. Sledge filed a complaint about this review. She reached a settlement agreement that resulted in the language Ms. Sledge

disagreed with (i.e., that she did not "get along" with people) being removed from her review. *Id.*

In her EEO complaint precipitating this case, Ms. Sledge alleged that she had participated as a witness in discrimination and sexual harassment investigations against Dr. Paniotte and Ms. Hamilton in May and June 2013, respectively. *See* 90-1 at 6. Ms. Sledge testified that beginning in November 2013 her co-workers and supervisors made numerous accusations that she was incompetent. *See* R. 74 at 43-49 (26:3–34:13). She also testified that during this time period Ms. Hamilton was upset about Ms. Sledge taking family medical leave. *See* R. 74 at 41-43 (24:2–26:2).

In December 2013 and January 2014, Dr. Zhang and Dr. Paniotte both withdrew their collaborative agreements with Ms. Sledge. R. 74 at 97; R. 74 at 102. Dr. Paniotte's letter withdrawing his agreement stated that his withdrawal was due to "concerns regarding your clinical care," and cited two incidents in particular. *See* R. 74 at 97. Dr. Zhang's letter also stated that his withdrawal was based on "concerns about lack of communication and quality of patient care." R. 74 at 102. As a result, Sledge could no longer work as nurse practitioner, and she was reassigned to be a "float nurse." R. 74 at 99-100.

In January 2014, Ms. Sledge left the Adam Benjamin Clinic and returned to the Jesse Brown Medical Center. R. 74 at 104. She testified that upon her return, the chief of nursing accused her of patient abuse. R. 74 at 73-74 (64:22–65:18).

Ms. Sledge later received a notice dated June 18, 2014 from the Jesse Brown Medical Center that her employment would be terminated. R. 74 at 106-07. The

reason given was a failure to maintain a collaborative agreement. *Id.* Ms. Sledge's employment with the VA ended on October 9, 2014. R. 1 ¶ 24.

## B.     Analysis

Ms. Sledge claims that she was fired because of her race, age, and perceived disability in violation of Title VII, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. She also claims violations of those three statutes, as well as the Whistleblower Protection Act, because her termination was retaliation for complaints she filed against supervisors.

### 1.     Whistleblower Protection Act

As an initial matter, Ms. Sledge has failed to present evidence that she administratively exhausted her Whistleblower Protection Act claim. "The Whistleblower Protection Act instructs a whistleblower to 'seek corrective action from the Special Counsel before seeking corrective action from the Board,'" and before seeking review in federal court. *Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 920 (7th Cir. 2018) (quoting 5 U.S.C. § 1214(a)(3)); *see also Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006) ("[U]nder no circumstances does the [Whistleblower Protection Act] grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance." (quoting *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002))). Ms. Sledge has not demonstrated or alleged that she administratively exhausted her claim. Therefore, summary judgment is granted to the VA on this claim.

## 2.    Discrimination Claims

In an employment discrimination case, the "central question at issue is whether the employer acted on account of the plaintiff's race (or sex, disability, age, etc.)." *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013). On summary judgment "the correct standard . . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor *caused* the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (emphasis added). Causation is a requirement in all three civil rights statutes at issue in this case. *See Skiba v. Ill. Cen. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018); *Monroe v. Ind. Dep't of Trans.*, 871 F.3d 495, 503 (7th Cir. 2017).

There is no direct or circumstantial evidence that any of Ms. Sledge's protected characteristics played a role in her termination, or precipitated any of the accusations about her performance leading up to her termination. Generally, a plaintiff claiming employment discrimination (whether through an attorney or pro se) at least presents evidence that the plaintiff was satisfying her employer's expectations. The plaintiff also then usually presents some kind of evidence indicating that the employer's reason for termination was pretextual, whether it be express comments to that effect, comments circumstantially indicating that the plaintiff's protected characteristics were at least part of the employer's reasoning, or evidence of other similarly situated employees who do not have the protected characteristics and were not fired. Ms.

Sledge has not identified any evidence that would permit such an inference of causation.

Furthermore, the VA has produced evidence of a facially valid explanation for firing Ms. Sledge: i.e., her collaborative physicians withdrew their agreements to supervise her work. Ms. Sledge has not identified any evidence (such as VA policies or procedures, or employment records of other nurse practitioners) that revocation of a collaborative agreement is not always a sufficient basis for termination. She also has not identified other nurse practitioners who lost their collaborative physician agreements. Without such evidence, Ms. Sledge also cannot indirectly demonstrate that her race, age, or disability caused her termination by comparing her experience to other nurse practitioners employed at the VA hospitals where she worked. Without evidence that any of her protected characteristics caused her termination, there is no basis for a reasonable jury to conclude that the withdrawal of her collaborative physician agreements was a pretextual justification for her termination.

Ms. Sledge testified that Dr. Paniotte was never her collaborative physician. Her testimony is contrary to the copy of her collaborative agreement the VA produced listing Dr. Paniotte as Ms. Sledge's alternative collaborative physician. This factual dispute is immaterial, however, because Ms. Sledge does not dispute that Dr. Zhang withdrew his collaborative agreement, and Ms. Sledge does not contend that there was another doctor willing to collaborate with her. She has also produced no evidence that withdrawal of a nurse practitioner's collaborative agreement, and the lack of a physician willing to collaborate, are an insufficient basis for termination.

Ms. Sledge continues to contend that she has not received the discovery she sought. The Court went to great lengths to give Ms. Sledge time to take discovery over the course of more than a year. But despite the Court's efforts during the discovery period to elicit an explanation of the documents she was seeking, Ms. Sledge never clearly articulated her requests. Additionally, twice during the course of discovery, Ms. Sledge stated on the record that she was not interested in taking any depositions. Despite her repeated complaints about the discovery process, Ms. Sledge never sought discovery that might have helped prove her case.

For these reasons, summary judgment is granted to the VA on Ms. Sledge's discrimination claims.

### 3. Retaliation Claims

As with claims of discrimination, the heart of a retaliation claim is evidence that a plaintiff's protected action *caused* the defendant to take an adverse action against her. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 887-88 (7th Cir. 2016) (emphasis added). Ms. Sledge has presented no such evidence. As discussed, the VA has presented documentary evidence that Ms. Sledge was fired because her collaborating physicians withdrew their agreements to supervise her. The physicians stated that they withdrew their agreements because Ms. Sledge's performance was unsatisfactory. Ms. Sledge has presented no evidence to the contrary regarding her performance. If Ms. Sledge had evidence that her performance was satisfactory, and that the physicians' withdrawal of their collaborative

agreements was done in bad faith, she needed to submit that evidence with her brief and highlight it for the Court.

Additionally, "[s]tatutorily protected activity requires more than simply a complaint about some situation at work, no matter how valid the complaint might be." *Skiba*, 884 F.3d at 718. "Rather, the complaint must indicate that discrimination occurred because of sex, race, national origin, or some other protected class." *Id.* "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that interference, is insufficient." *Id.* As discussed with reference to her discrimination claims, Ms. Sledge has presented no evidence that her conflicts at work concerned her race, age, or disability. Absent some evidence in this regard, her claims must fail.

Ms. Sledge's argument against summary judgment primarily rests on the fact that she was fired after having made complaints against supervisors, including the doctors whose withdrawal of their collaborative agreements precipitated Ms. Sledge's termination. But "suspicious timing alone is rarely enough by itself" to defeat summary judgment on a retaliation claim. *Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 505 (7th Cir. 2017). Furthermore, the timing of the complaints Ms. Sledge cited in her deposition is not suspicious. Ms. Sledge claims that she filed complaints against Dr. Gertsberg in 2008 and 2010. This is well before she was fired, and Dr. Gertsberg was no longer her supervisor when she was fired. Ms. Sledge also testified that she filed a complaint against Dr. Zhang in 2011. But this was before Dr. Zhang became her collaborating physician. And according to Ms. Sledge, Dr. Zhang

only agreed to become her collaborating physician once the complaint was resolved. Since Dr. Zhang agreed to be her collaborating physician despite Ms. Sledge having made a complaint against him, and Ms. Sledge was not fired until three years later, this complaint cannot be said to have caused her termination.

Finally, in the complaint precipitating this case, Ms. Sledge alleges that she testified against Dr. Paniotte and Ms. Hamilton in discrimination and sexual harassment investigations in May and June of 2013. In the following months, various staff began to complain about Ms. Sledge's performance, which eventually resulted in Dr. Zhang and Dr. Paniotte withdrawing their collaborative agreements with Ms. Sledge. But Ms. Sledge has not identified any evidence that these investigations into Dr. Paniotte's and Ms. Hamilton's actions actually occurred, or that Ms. Sledge participated as a witness. In her summary judgment brief, Ms. Sledge notes that the VA produced records of the sexual harassment investigation of Ms. Hamilton. *See* R. 77 at 4. But Ms. Sledge has not highlighted any of these documents for the Court's consideration, and it is not the Court's responsibility to search the 573 pages of exhibits Ms. Sledge attached to her brief to support her assertions. *See Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 898 (7th Cir. 2018) ("It was . . . the plaintiffs' responsibility to point us to any evidence that would have supported this essential element of their claim."). Furthermore, Ms. Sledge does not discuss any investigation into Dr. Paniotte's conduct in her brief. Absent evidence that these events occurred, Ms. Sledge's allegations in her EEO complaint alone are insufficient to defeat summary judgment.

Moreover, even if Ms. Sledge actually did participate as a witness in investigations into the conduct of Dr. Paniotte and Dr. Hamilton, Ms. Sledge's claims still rest solely on suspicious timing. Ms. Sledge has not presented any evidence that the complaints about her performance were pretextual. Absent such evidence, a reasonable jury could not find that Ms. Sledge was fired for any other reason than that her collaborating physicians revoked their agreements with her such that she could no longer work as a nurse practitioner.

## Conclusion

For the foregoing reasons, Ms. Sledge's motion for recusal, R. 75, is denied, and the VA's motion for summary judgment, R. 68, is granted. Additionally, the Court's review of the evidence and arguments on summary judgment finds no basis to reconsider its denial of Ms. Sledge's motion for discovery sanctions.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: August 21, 2018